11 CIV. 7406

1

Mr. Piero A. Bugoni - Pro Se
160 W Camino Real #191
Boca Raton FL 33432

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Piero Bugoni<br>　　　　PLAINTIFF<br><br>vs<br><br>Eugene McGivney et Ux.<br><br>Suzanne Solferino et Vir<br><br>Jeferies Corporation<br><br>Michael K. Jeanes,<br>　　Clerk of Maricopa County<br>　　Arizona Superior Court,<br>　　In His Official Capacity,<br><br>Sharon R. Bock<br>　　Clerk of Palm Beach County<br>　　Florida Circuit Court In Her<br>　　Official Capacity<br>　　　　DEFENDANTS | ）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>） | CASE No.:<br><br><br>`COMPLAINT PURSUANT TO:`<br>`42 U.S.C. §§ 1981, 1983,`<br>`AND 28 U.S.C. §§ 1441 et`<br>`seq.`<br><br><br>`JURY TRIAL DEMANDED` |

I. Jurisdiction:

1) This Court has jurisdiction pursuant to US Constitution Amendments V, XIV, 42 USC §§ 1981, 1983 et seq.; 28 U.S.C. §§ 1343, 2201 et seq., State Claims Pursuant to the Uniform Declaratory Judgments Act (Codified as FRS Chapter 86, ARS Title 12, Chapter 10, Article 2), are brought herein pursuant to 28 USC § 1441 et seq. This Court has jurisdiction because defendant Jefferies is regulated by Federal Law, and Agency Rules, and defendants McGivney and Solferino purported to be acting under color of such, and because the records disseminated by Jeanes and Bock which are causing damage upon Plaintiff are disseminated beyond the geographical and sovereign boundaries of the states in which the proceedings they record took place.

28

1

## II. Venue:

2) Venue is sought herein because the injustice Plaintiff has suffered took place in the State of New York, Borough of Manhattan.

## III. Parties Defendant

3) Eugene McGivney is an individual employed by defendant Jefferies Corporation in the "compliance department" and is the party responsible along with defendant Solferino for causing the extreme financial hardship caused upon Plaintiff. Because New York is a "Community Property" state, defendant McGivney's spouse whether current or former, (if any) is adjoined. It is not known by Plaintiff whether McGivney is married, and considers it doubtful that anyone would, but "et Ux" adjoins any divorcee as well, and since homosexual marriage is legal in New York, as well includes McGivney's homosexual partner.

4)  Suzanne Solferino an individual employed by defendant Jefferies Corporation in the "human resources" and is the party responsible along with defendant McGivney for causing the extreme financial hardship caused upon Plaintiff. "Et Vir" adjoins any spouse, current or former.

5) Jefferies Corporation is sued as a Corporation as the respondeat superior party of defendants Solferino and McGivney.

## IV. Short And Plain Statement of Claim

6) Defendant McGivney under threat of violence, arrest and prosecution, interfered with contractual employment between Plaintiff and Defendant Jefferies and by that conduct has caused Plaintiff to lose Contract Employment with defendant Jefferies Corporation.

28

1

7) Defendant Solferino under threat of violence, arrest and prosecution, interfered with contractual employment between Plaintiff and Defendant Jefferies and by that conduct has caused Plaintiff to lose Contract Employment with defendant Jefferies Corporation.

8) Defendant Jefferies Corporation is held for Respondeat Superior Liability for the conduct of defendants Solferino and McGivney.

9 ) Defendant McGivney  claimed that he was acting under "regulation" and pursuant to corporate policy of defendant Jefferies.

10) Defendant Solferino claimed that she was acting under "regulation" and pursuant to corporate policy of defendant Jefferies.

11) Defendant Jeanes is acting under color of State Law or administrative rule and is disseminating records beyond the sovereign and geographical boundaries of the state of Arizona.

12) Defendant Bock is acting under color of State Law or administrative rule and is disseminating records beyond the sovereign and geographical boundaries of the state of Florida.

13) The dissemination of records by defendants Jeanes and Bock have caused Plaintiff to lose contracts and employment numerous times over the past year and a half, and continue to do so as in the present case.

14) Plaintiff has every reason to belief that the dissemination of records by defendants Bock and Jeanes will continue to cause those damages upon Plaintiff and this complaint is a continuing injury claim.

28

1

## V. Facts In Support of Claim

15) Defendant McGivney viewed the records disseminated by Jeanes and Bock.

16) Defendant Solferino viewed the records disseminated by Jeanes and Bock.

17) After viewing the information disseminated by defendants Jeanes and Bock, defendant McGivney interfered with and caused the loss of contractual employment with defendant Jefferies.

18) After viewing the information disseminated by defendants Jeanes and Bock, defendant Solferino  interfered with and caused the los of contractual employment with defendant Jefferies.

19) Defendant Jeanes is currently disseminating information about Plaintiff in the form of "state records" that has caused, is causing, and will continue to cause Plaintiff to lose contracts and employment.

20) Defendant Jeanes is transmitting or allowing the information stated in 19) supra, to be transmitted beyond the geographical and sovereign boundaries of the State of Arizona.

21) Defendant Bock is currently disseminating information about Plaintiff in the form of "state records" that has caused, is causing, and will continue to cause Plaintiff to lose contracts and employment.

22) Defendant Bock is transmitting or allowing the information stated in 21) supra, to be transmitted beyond the geographical and sovereign boundaries of the State of Arizona.

28

1

23) No person has any right whatsoever to cause financial or any other harm upon a person for any reason whatsoever, when that person has caused no harm upon them whatsoever or engaged in any conduct in any way toward such a person.

24) In any case where a person may be subjected to financial or other damages, such a person is always entitled to Due Process prior thereto.

25) Defendant McGivney consents by his conduct to having his employment terminated by the actions of another.

26) Defendant Solferino consents by her conduct to having her employment terminated by the actions of another.

27) Defendant Jeanes consents by his conduct to being denied employment or having his employment terminated by actions of a Court.

28) Defendant Bock consents by her conduct to being denied employment or having her employment terminated by actions of a Court.

29) Whatever immunity Jeanes or Bock may hold, does not apply to non-monetary, declaratory or punitive relief, or to removal from office.

30) The contract that Plaintiff had under which he was engaging in employment at Jefferies corporation has value, and therefor is an Item of Property.

28

1

31) The contract that Plaintiff had under which he was engaging in employment at Jefferies corporation was negotiated between parties located in Florida, Washington DC and New York, and is paid by parties in New York, to a party located in Florida, and as such is an article of interstate commerce.

VI. Cause of Action

32) COUNT 1:

Defendant McGivney is sued for causing Plaintiff to lose Contract Employment with defendant Jefferies Corporation, and for interfering with the contractual employment between Plaintiff and defendant Jefferies Corporation.

33) Allegation, Count 1:

McGivney's conduct is a violation of Plaintiff's Right to Be Let Alone, Plaintiff's Rights To Be Free Harassment, Threat, and Harm Caused By Others, To Hold Property, Liberty To Contract, and constitutes the Common-Law torts of interference with commerce, (interstate in this case), and causing the loss of property or contract.

34) Law Governing, Count 1:

Amendment V US constitution, Article 1 § 1, New York Constitution. To whatever extent McGivney may have been acting under color of any regulation, law, custom or usage, his conduct is a violation of 42 USC § 1983, and to whatever extent Mcgivney interfered with or caused the loss of contractual employment due the information disseminated by defendants Jeanes and Bock, is a violation of 42 USC § 1981. McGivney's conduct further constitutes the common law torts as stated in 33) supra.

35) Specific Facts in support of allegation, Count 1:

The specific facts in support of Count 1) are contained in Plaintiff's Affidavit included

28

herein.

1

36) Relief Requested, Count 1:

a) Compensatory Damages:

The balance of the contract that Plaintiff was to earn but for the actions of defendant McGivney. (10 weeks @ 40 Hours per week, / $45.00 per hour, a total of $18,000 to be divided between defendants McGivney and Solferino based on their individual liability)

b) Punitive Damages:

Because the acts of McGivney are so heinous as they would cause a diligent hard-working individual who provided good service to a client to lose a contract, and because McGivney's conduct is causing and will continue to cause Plaintiff to suffer continued extreme financial hardship, and is causing harm to Plaintiff's family and will cause Plaintiff's elderly parent to lose the house she has lived in for more than a decade and be homeless, sufficient equitable relief must be extracted from McGivney so as to individualize to him the harm he causes others. For this Plaintiff seeks Punitive damages in the amount of One Hundred Million Dollars, ($100, 000,000) to be paid to the United States of America, and the forfeiture to the United States of America of all personal assets, monetary, property, or otherwise, held by McGivney et Ux.

c) Preliminary Injunction:

i) Preliminary injunction prohibiting any association whatsoever between defendant McGivney and defendant Jefferies Corporation.

ii) Preliminary injunction prohibiting defendant McGivney from engaging in any contract or employment whatsoever with any client or employer regulated by whatever regulations McGivney was purporting or purports to act under.

iii) Preliminary injunction ordering the United States' Marshals to inventory all defendant McGivney's personal property and assets (whether held individually, or as "Community Property" between McGivney et Ux), and prohibiting McGivney et Ux., under penalty of criminal contempt from divesting himself of, or transferring such property in any way to

28

1

prevent it's forfeiture.

d) Declaratory Judgment:

i) Declaratory Judgment by a Jury that McGivney's conduct constitutes wrongful conduct and violation of the laws stated, in Count 1, and the commission of tort as described in Count 1.

ii) Declaratory Judgment by a Jury that whatever law or regulation that defendant McGivney purports or purported to act under, is unconstitutional either on its face or as applied, to whatever extent that McGivney purports or purported to be acting thereunder and that his actions constitute the claims and torts charged herein.

e) Permanent Injunction:

i) Permanent injunction prohibiting any association whatsoever between defendant McGivney and defendant Jefferies Corporation.

ii) Permanent injunction prohibiting defendant McGivney from engaging in any contract or employment whatsoever with any client or employer regulated by whatever regulations McGivney was purporting or purports to act under.

37) COUNT 2:

Defendant Solferino is sued for causing Plaintiff to lose Contract Employment with defendant Jefferies Corporation and for interfering with the contractual employment between Plaintiff and defendant Jefferies Corporation.

38) Allegation, Count 2:

Solferino's conduct is a violation of Plaintiff's Right to Be Let Alone, Plaintiff's Rights To Be Free Harassment, Threat, and Harm Caused By Others; To Hold Property; Liberty To Contract; and constitutes the Common-Law torts of interference with commerce, (interstate in this case), and causing the loss of property or contract.

28

1

39) Law Governing, Count 2:

Amendment V US constitution, Article 1 § 1, New York Constitution. To whatever extent Solferino may have been acting under color of any regulation, law, custom or usage, her conduct is a violation of 42 USC § 1983, and to whatever extent Solferino interfered with or caused the loss of contractual employment due the information disseminated by defendants Jeanes and Bock, is a violation of 42 USC § 1981. Solferino's conduct further constitutes the common law torts as stated in 38) supra.

40) Specific Facts in support of allegation, Count 2:

The specific facts in support of Count 2) are contained in Plaintiff's Affidavit included herein.

41) Relief Requested, Count 2:

a) Compensatory Damages:

The balance of the contract that Plaintiff was to earn but for the actions of defendant Solferino. (10 weeks @ 40 Hours per week, / $45.00 per hour, a total of $18,000 to be divided between defendants McGivney and Solferino based on their individual liability).

b) Punitive Damages:

Because the acts of Solferino are so heinous as they would cause a diligent hard-working individual who provided good service to a client to lose a contract, and because Solferino's conduct is causing and will continue to cause Plaintiff to suffer continued extreme financial hardship, and is causing harm to Plaintiff's family and will cause Plaintiff's elderly parent to lose the house she has lived in for more than a decade and be homeless, sufficient equitable relief must be extracted from Solferino so as to individualize to him the harm she causes others. For this Plaintiff seeks Punitive damages in the amount of One Hundred Million Dollars, ($100, 000,000) to be paid to the United States of America, and the forfeiture to the

28    United States of America of all personal assets, monetary, property, or otherwise, held by

1

Solferino et Vir.

c) Preliminary Injunction

i) Preliminary injunction prohibiting any association whatsoever between defendant Solferino and defendant Jefferies Corporation.

ii) Preliminary injunction prohibiting defendant Solferino from engaging in any contract or employment whatsoever with any client or employer regulated by whatever regulations Solferino was purporting or purports to act under.

iii) Preliminary injunction ordering the United States' Marshals to inventory all defendant Solferino's personal property and assets (whether held individually, or as "Community Property" between Solferino et Vir), and prohibiting  Solferino et Vir, under penalty of criminal contempt, from divesting herself of, or transferring such property in any way to prevent it's forfeiture.

d) Declaratory Judgment

i) Declaratory Judgment by a Jury that Solferino's conduct constitutes wrongful conduct and violation of the laws stated, in Count 2, and the commission of tort as described in Count 2.

ii) Declaratory Judgment by a Jury that whatever law or regulation that defendant McGivney purports or purported to act under, is unconstitutional either on its face or as applied, to whatever extent that McGivney purports or purported to be acting thereunder and that his actions constitute the claims and torts charged herein.

e) Permanent Injunction

i) Permanent injunction prohibiting any association whatsoever between defendant Solferino and defendant Jefferies Corporation.

ii) Permanent injunction prohibiting defendant Solferino from engaging in any contract or employment whatsoever with any client or employer regulated by whatever regulations Solferino was purporting or purports to act under.

28

1

42) COUNT 3:

Defendant Jefferies Corporation is sued as the party Respondeat Superior to Defendants McGivney and Solferino

43) Allegation Count 3:

Defendants Solferino and McGivney claimed and purported to be acting in keeping with defendant Jefferies Corporation policy, and as such have brought liability upon their superior Jefferies Corporation therefor. The allegations made in Count 1) and Count 2) are incorporated and restated herein and apply to defendant Jefferies Corporation to whatever extent they endorse such a policy or claim that defendants Solferino and McGivney were acting in keeping with such a policy.

44) Law Governing, Count 3:

The law governing Count 1) and Count 2) is incorporated and restated herein.

45) Specific Facts in support of allegation, Count 3:

The specific facts in support of Count 3) are contained in Plaintiff's Affidavit included herein.

46) Relief Requested, Count 3:

a) Preliminary Injunction:

i) Preliminary Injunction prohibiting any association whatsoever between defendant Jefferies Corporation and defendants Solferino and McGivney.

ii) Preliminary Injunction prohibiting defendant Jefferies Corporation from assisting defendants Solferino and McGivney in any way with their defense in this matter.

28

1

b) Compensatory Damages:

Because a Jury is demanded in this matter, Plaintiff seeks as compensation nominal damages in the amount of Twenty One Dollars ($21) from defendant Jefferies Corporation as compensation for their respondeat superior liability in this matter.


c) Punitive Damages:

Because the policy that defendants Solferino and Mcgivney claim or purport to be acting under is so heinous that it causes a diligent, hard-working person who provides good service to their client to be deprived of employment and contract, and because this interferes with such a person's paying of their bills, and enjoying their Life, Liberty, and Pursuit of Happiness, and because that policy interferes with Plaintiff's ability to engage in commerce, and this collaterally causes others of commerce, the very commerce that defendant Jefferies Corporation earns its wealth from, and because that policy causes Plaintiff to be unable to pay his taxes which fund the salaries of legislators to repeal or prevent the passage of whatever law or regulation defendant Jefferies Corporation's policy purports to be upholding, and likewise causes Plaintiff to be unable to pay his taxes which fund the salaries of Federal Judges, and subsidizes Federal Courts to hear and intervene in such matters, and ultimately protect Plaintiff as with all Citizens from such unconstitutional practices, Plaintiff seeks as Punitive Damages the sum of One Hundred Million Dollars, ($100,000,000) to be paid to The Unites States of America to protect Plaintiff as with all Citizens from the sort of harm caused by defendant Jefferies Corporation as stated in this paragraph.


d) Permanent Injunction

Permamnent Injunction prohibiting any association whatsoever between defendant Jefferies Corporation and defendants Solferino and McGivney.

28

1

e) Declaratory Judgment

Declaratory Judgment by a Jury that whatever law or regulation that defendant Jefferies Corporation purports to be adhering to by the actions of defendants Solferino and McGivney is unconstitutional on its face or as applied, and as such constitutes commission of the claims and torts charged herein.

47) COUNT 4:

Plaintiff challenges the dissemination beyond the geographical and sovereign boundaries of the State of Arizona of criminal records regarding him by the Maricopa County Superior Court as a violation of his Constitutional Rights because it has on numerous occasions caused him to be denied employment.

48) Allegation of Rights Violated, Count 4:

The actions challenged in Count 3 are a violation of Plaintiff's Rights to Life, Liberty, Pursuit of Happiness, to Due Process, and Equal protection of Law, to Employment and Contract, to Acquire and Possess Property, and to Serve His Country, and Better Himself, and Provide For His Family.

49) Law Governing, Count 4:

The policy and custom is challenged in Count 1 pursuant to Amendment V, XIV; and 42 USC §§ 1981, 1983 et seq.

50) Specific Facts in support of allegation, Count 4:

The specific facts in support of Count 4) are contained in Plaintiff's Affidavit included herein.

28

51) Relief Requested, Count 4:

a) Preliminary Injunction ordering defendant Jeanes to cease and desist the dissemination of any record under his administrative authority to any party outside of the geographical and sovereign boundaries of the State of Arizona, and to cease and desist allowing such records to be retrieved or published by any party outside of the geographical and sovereign boundaries of the State of Arizona.

b) Declaratory Judgment by a Jury that defendant Jeanes' dissemination of the records in question, or allowing such records to be disseminated beyond the geographical and sovereign boundaries of the State of Arizona constitutes a violation of Plaintiff's Federally Protected Constitutional Rights as charged herein.

c) Permanent Injunction ordering defendant Jeanes to cease and desist the dissemination of any record under his administrative authority to any party outside of the geographical and sovereign boundaries of the State of Arizona, and to cease and desist allowing such records to be retrieved or published by any party outside of the geographical and sovereign boundaries of the State of Arizona.

d) Punitive Damages

i) Removal from Office: defendant Jeanes, for having violated the Public Trust of the Citizens of the State of Arizona, and having acted ultra-vires by causing a person to be deprived of Federally Protected Rights for having committed no act whatsoever, and his having done so beyond the geographical and sovereign boundaries of the State of Arizona, and for his having caused collateral damage to persons who have not committed any crime whatsoever, and are not involved in any way with the matters recorded by him, be ordered to return to the Citizens of the State of Florida the Public Property that is his office.

ii) Permanent Injunction prohibiting defendant Jeanes from associating in any way with any individual, party, board, organization, corporation, or otherwise, for the purpose of labor

1    to, or engaging in commerce with, The United States of America, or any of its Several

States.

52) COUNT 5:

Plaintiff challenges the keeping and dissemination beyond the geographical and sovereign

boundaries of the State of Florida of criminal records regarding him by the Palm Beach

County Circuit Court as a violation of his Constitutional Rights because it has on numerous

occasions caused him to be denied employment.

53) Allegation of Rights Violated, Count 5:

The actions challenged in Count 5 are a violation of Plaintiff's Rights to Life, Liberty,

Pursuit of Happiness, to Due Process, and Equal protection of Law, to Employment, and

Contract, to Acquire and Possess Property, to Serve His Country, and Better Himself, and

Provide For His Family.

54) Law Governing, Count 5:

The policy and custom is challenged in Count 5 pursuant to Amendment V, XIV; and 42

USC §§ 1981, 1983 et seq.

55) Specific Facts in support of allegation, Count 5:

The specific facts in support of Count 5) are contained in Plaintiff's Affidavit included

herein.

56) Relief Requested, Count 5:

a) Preliminary Injunction ordering defendant Bock to cease and desist the dissemination of

any record under his administrative authority to any party outside of the geographical and

sovereign boundaries of the State of Florida, and to cease and desist allowing such records

28   to be retrieved or published by any party outside of the geographical and sovereign

1

boundaries of the State of Florida.

b) Declaratory Judgment by a Jury that defendant Bock's dissemination of the records in question, or allowing such records to be disseminated beyond the geographical and sovereign boundaries of the State of Florida constitutes a violation of Plaintiff's Federally Protected Constitutional Rights as charged herein.

c) Permanent Injunction ordering defendant Bock to cease and desist the dissemination of any record under his administrative authority to any party outside of the geographical and sovereign boundaries of the State of Florida, and to cease and desist allowing such records to be retrieved or published by any party outside of the geographical and sovereign boundaries of the State of Florida.

d) Punitive Damages

i) Removal from Office: defendant Bock, for having violated the Public Trust of the Citizens of the State of Florida, and having acted ultra-vires by causing a person to be deprived of Federally Protected Rights for having committed no act whatsoever, and her having done so beyond the geographical and sovereign boundaries of the State of Florida, and for her having caused collateral damage to persons who have not committed any crime whatsoever, and are not involved in any way with the matters recorded by her, be ordered to return to the Citizens of the State of Florida the Public Property that is her office.

ii) Permanent Injunction prohibiting defendant Bock from associating in any way with any individual, party, board, organization, corporation, or otherwise, for the purpose of labor to, or engaging in commerce with, The United States of America, or any of its Several States.

28

1

## VI. PLAINTIFF'S AFFIDAVIT

57) I, Plaintiff, Piero A Bugoni swear and affirm the following statement in support of the claims made above:

58) I am an American and a United States Citizen.

59) As such I am guaranteed all the Rights, Privileges and Immunities protected by the Unites States Constitution and all laws in pursuance thereof.

60) Regarding the keeping and Dissemination of Criminal Records on me by defendant Jeanes:

61) Since closing my retail business, Boca Computer Center Incorporated, located in Boca Raton Florida, I have continued to pursue my trade individually as an employee of other corporations, or as an independent contractor, continuing to operate as Boca Computer Center Incorporated. I am the President of that Corporation.

62) I have lost many jobs as a result of the keeping and dissemination of Criminal Records on me by defendant Jeanes.

63) I say "lost" jobs, because as part of the job acquisition process "background checks" are done.

64) In all cases where I have "lost" a job, the "background check" is done as a last step. In other words, a confirmed offer is extended to me, and a "background check" is performed as a last step, then the offer is rescinded, or the job is taken away.

28

1

65) The "jobs" I have lost are both employee type jobs, where I will be an IRS-W2 employee of another corporation, and contracts, where I will ply my trade, and bill a client as Boca Computer Center Incorporated. In all the cases stated, I pursue the employment through agencies (intermediaries), that advertise contract or IRS-W2 type employment on behalf of their clients who require employees or contractors. These intermediaries ultimately source people for this work, perform preliminary screening, submit potential employees' or contractors' curricula vitae to the end client, arrange meetings between their client and myself, and perform "background checks" when their client selects me for the employment, or contract. In some cases, the work will be done as a W2 employee of the end client, and these intermediaries' role is to find individuals to be hired by the end client, and in others these intermediaries act as prime, or sub-contractors to the end client, and the work is to be performed by me as a W2 employee of the intermediary, or by me as a sub-contractor of the intermediary, billing them as Boca Computer Center Incorporated.

66) The jobs that were taken away from me due to the dissemination of records by defendant Jeanes were located in Florida, where I am a resident and have been a Citizen, and also in Ohio, Utah, Tennessee, Georgia, The District Of Columbia, and now New York.

67) The keeping an dissemination of Criminal Records on me by defendant Jeanes is a violation of my Constitutional Rights because I am no longer serving any sentence of any kind, and before the law, I am equal as any other Citizen.

68) The State of Arizona no longer has any jurisdiction over me, and therefore no right whatsoever to interfere with, limit, or deprive me of any of my Rights as an individual.

69) While it may be a state's right to keep criminal records on an individual, the time has passed for which these records can be used to show prior convictions, for the purpose of sentencing any additional criminal acts. (7 years).

28

1

70) Whatever legitimate reason the state may have had for keeping such records has now expired, and because the dissemination of those records interferes with my Fundamental Rights to Life, Liberty, Pursuit of Happiness, to Employment and to Contract, to Acquire and Possess Property, to Better Myself, and to Serve My Country, defendant Jeanes must show a compelling objective for keeping and disseminating such records, and that there is no less restrictive alternative.

71) The dissemination of those records by defendant Jeanes has deprived me of the Rights stated during the period mentioned as follows:

72) In or about April 2010, I secured a contract in Fort Lauderdale Florida. I do not remember the clients name at the time of this writing, but I do have a record of the communication with the client, and the intermediary. The duration of the contract was for a minimum of 6 months, and I believe up to one year.

73) After being told that I was selected to perform the contract, I was sent forms to sign for a "background check". After that background check was done, I was told that the offer was now rescinded based on the contents of that background check.

74) At the time this offer was rescinded, I was servicing all my personal and business debt, and had I acquired this contract that debt would not be unpaid in the state that it is now.

75) As a small business operator, I was told by my creditors that they would not extend any credit in the name of a corporation, until at least three consecutive years of profitability have been documented by corporate tax returns, and that any kind of extension of credit would be based on my personal "credit rating", and extended to me personally, in my name, and guaranteed by me personally. To my understanding this is the standard of practice for the credit industry, with regard to "small businesses", particularly when new. My personal

28

1   "credit rating" was sufficient at the time to acquire credit, and that credit was used for business purposes, particularly to purchase merchandise and inventory for re-sale, but also for capital expenditures necessary to begin and deploy a business. As such it is disproportionately large compared to my ordinary personal credit usage.

76) As an individual, (not my corporation, or artificial person), I am very judicious, if not reluctant to use credit to any large degree, for the simple reason that it is just too expensive, and not generally a good value as such.

77) As a retail business however, when merchandise is purchased wholesale on credit, and re-sold at a higher price, the markup can usually offset any interest costs, and typically allow for profit, particularly if re-sold quickly. It also allows one to more fully stock their store without having to engage in large cash outlay. In other words, if credit is used as disposable income it is generally too expensive, but if it is used to generate revenue, its high cost is less prohibitory.

78) After the contract with the company in Fort Lauderdale was rescinded due to the records disseminated by defendant Jeanes, it would be a period of about six months before I would be extended another employment offer. In the interim, I did whatever piecework I could, but unfortunately, the pickings were very slim. This was a period from approximately April to August 2010. I did not reduce my efforts in any way with regard to pursuing contractual or employment work, but nonetheless, was not even extended any offers. It is not clear to me whether potential employers were doing "background checks", without notifying me, or whether they found my qualifications unsuitable, but I must say that this was during the period that our current economic conditions, or "recession" was really beginning to take hold. I suspect it was the economy because typically when I submit my Curriculum Vitae to a potential employer (whether W2 or Contract) I usually receive some kind of call back, or

28   follow up.  In this period, the amount of response I got dropped off dramatically. Also

1

because I use automated techniques to pursue employment leads, I can apply for, or pursue quite a large number of opportunities initially, which then after several contacts back and forth filters down to a smaller number of higher-quality opportunities which are then pursued further. Regardless, during this period I was unable to secure any kind of regular or gainful employment, and ultimately stopped paying my creditors. Due to the dissemination of records by defendant Jeanes, I have not been able to do so since.

79) Later in 2010, in August, or thereabouts, I was selected to work as an employee of the IBM Corporation, in Dubuque Iowa. In the application process, I was given the option to answer "no" to the question of whether I had previously been convicted of a felony, provided that the records were sealed, or expunged. Because I could not answer "no" I was denied the position.

80) In December of 2010, I acquired a contract with JP Morgan Chase, Inc. In Columbus Ohio. I appeared on site, and after being fingerprinted by their private security apparatchik, I was told to remove myself from the property because of the records disseminated by defendant Jeanes, (A separate Federal suit may be pending for this).

81) Just after the loss of that contract, I acquired another contract in Memphis, Tennessee, only to be denied again because of the records disseminated by Jeanes.

82) In February 2011 I was able to acquire a six month contract and keep myself employed. However, the amount earned was only enough to pay my expenses current at the time, with just barely enough to cover the costs, (travel, etc) to acquire a new contract, or employment position.

28

1

83) At the end of that contract (currently about the present time), I acquired another contract with IBM Corporation in Memphis Tennessee, only to be denied because of a "background check" and the records disseminated by defendant Jeanes.

84) I was also selected to appear for a third interview with Bank of America in Jacksonville. After disclosing the records to the records to the intermediary, I was told that I could not pursue the contract.

85) I was also selected to appear for a third interview with Goldman Sachs, in Orem Utah, but again, due to the records disseminated by defendant Jeanes, I was denied the employment.

86) Likewise, about the present time, I was selected to appear for an in-person (and final), interview with Turner Broadcasting in Atlanta Georgia, but was likewise denied that opportunity due to the records disseminated by defendant Jeanes, again, because the "background check" is performed as a final step in the employment process.

87) Between August 29, 2011, and the date of filing of this complaint, I appeared in the Washington DC area to pursue employment as an IRS-W2 employee of the CACI, Corporation, on "Project Omega", which is United States Department of Justice Contract Number DJJ07-C-1521. My role would have been to write computer program code to create, enhance and maintain the electronic search and retrieval system used to store and disseminate the documents and other matter in evidence, in the case of United States of America v. British Petroleum Inc.

88) After submission of my Curriculum Vitae to the Department of Justice, I was selected by whatever party or parties in that department as suitable for the role, based on my portfolio, prior experience, and professional qualifications. Upon appearing at 1100 L Street

28

1

NW in Washington DC, (DOJ Civil Division Office), for fingerprinting, and "background

check" as the final step of being granted employment, I was denied that employment, in part,

due to the records disseminated by defendants Jeanes.

89) In addition, I was denied the employment with the Department of Justice due to the

policy and custom not to hire persons with unsatisfied debt, and due to the records

disseminated by defendant Bock, as described below.

90) I must say that I have a one hundred percent closure percentage if I make it to the third

or final interview. (In my experience to date, some employers give two interviews prior to a

decision, others three). This means that If I make it to the final interview, I will get the job.

This is because I have about 15 years professional experience in my trade, I understand my

clients needs, and can articulate that, and have a demonstrable ability to fulfill them. My

work is technical in nature and I can demonstrate competency therein. With regard to

technical contracts at least, the employment criteria are slightly different than in some other

types of employment. A high stress is placed upon a persons ability to do the job, and a

person who is able to practically demonstrate that usually secures the position. Ultimately I

present what amounts to a portfolio, and clients genuinely like my product.

91) However, just because I get the job doesn't mean I get to keep it. And in each of the

instances stated above, this was because of the records disseminated by Defendant Jeanes.

92) In each of the cases stated above, for reasons I cannot understand, employers without

exception choose to do a "background check" after extending an offer of employment. I

have asked potential employers or intermediaries to do so prior to me spending any time or

money to pursue the employment, but for whatever reasons they refuse to do so. (The reason

I do this is that there is no hard and fast rule that I can discern about employers position

regarding employing persons with past criminal convictions, and prior to the filing of this

28

1     suit, my position was that if an employer is to reject me based on the records disseminated by Jeanes, that they do so early on, or better, prior to them even contacting me, so that I can focus my efforts on those clients that will employ me, and likewise not waste any time or money to acquire employment only to have it taken away due to the records disseminated by Jeanes.)

93) In each of the cases stated above where I was denied employment due to the records disseminated by Jeanes, I did actually acquire the employment, or have a reasonable belief that I would acquire have acquired the employment, only to have it taken away, or denied, due to the records disseminated by defendant Jeanes.

94) Because I have to extend both time and money at my expense, to acquire employment, when that employment is taken away due to the records disseminated by Jeanes, this causes me to be unable to service my debt, much less in many cases pay my ordinarily occurring expenses. I am never compensated for the time or expenses that I incur as such in pursuing employment, (although in the most recent case with "Project Omega", I am trying , apparently to no avail), and I must bear those costs myself.

95) Because of the records disseminated by Jeanes, in the time period stated I have had to acquire five or six jobs, just to keep one. Ordinarily one must apply and interview for a number of jobs just to get one. In my case the jobs are actually extended to me then taken away due to the records disseminated by defendant Jeanes. I actually have to *get* a number of jobs just to keep one.

96) Because I have been unable to service my various debts, which were acquired from the operation of a retail business, and have now been denied employment as well, as a result of that debt, as described below.

28

1

97) Upon appearing at the DOJ Civil Division for fingerprinting as described above, a "consumer credit report" inquiry was done. Based on the content of that report I was denied the employment with the DOJ for which I had previously been deemed suitable.

98) The individual who was performing the fingerprinting and "background investigation" stated: "You are more susceptible to bribery if you have bad credit". I do not believe that this person meant me specifically when she said "You" but was simply stating in the second person the premise that "A person is more susceptible to bribery if they have bad credit." Further, the person performing the fingerprinting and "background investigation" was not the person responsible for denying me employment based on credit, much less the decision to use personal credit history as employment criteria. She was simply performing a service to the DOJ to carry out the policy and custom of that department. (I have challenged that policy and custom in a separate complaint, - Bugoni v. Holder et al, which is now on Appeal in Washington DC).

99) In the law of America, each person has the Absolute Right to be treated as an individual, separate and distinct from any and all others, and not to be deprived of Rights because of the conduct of others or because of what people believe they "might" do.

100) Regarding the dissemination of records by defendant Bock:

101) In the instance stated above regarding employment with the DOJ, records disseminated by Bock were used as cause to deny me employment. (They may have been used in other cases as well, but I have no specific knowledge at this time that such was the case.

102) Upon being fingerprinted, a report was returned from the FBI (Number 28619LA0, IAFIS Control Number E2011255000000061990) containing information from records

28   disseminated by both Jeanes and Bock.

1

103) Because I served my sentence of probation In the Interstate Compact program, I was required to register in the State of Florida, as a criminal. I was given a Florida Department of Corrections prisoner number, and notified that I was in fact serving my sentence of probation in two states simultaneously. In other words, I became a prisoner of the State of Florida in addition to that of Arizona.

104) As a result of the additional records generated for the State of Florida, that are kept and disseminated by defendant Bock, it appeared to the person making the decision to deny me employment, (The COTR), that I had additional offenses, or that I am a multiple offender of the same crimes. It created the appearance that I have committed twice as many crimes as I actually have. As a result, I was denied employment.

105) In addition, the records disseminated by Bock contain information about arrests where I was wrongfully arrested and wrongfully charged. Specifically for the crime of Driving With A Suspended License or Failure to Appear for court dates related thereto.

106) In all cases in Florida, where I was charged with Driving While License Suspended, my License was "suspended" for failure to respond to a traffic infraction (not crime) within the specified 30 day period, or for failure to appear for one or more court dates related thereto. In the case of the late response, I actually responded to the infraction in time, but it was not docketed until later, and my license was suspended, as a result. Then for a traffic stop due to a non-moving violation, (tag light, brake light, license plate, etc.) I was charged with Driving With A Suspended License. In the other cases, my license was "suspended" because the state failed to "unsuspend" or "reinstate" my license after I met whatever requirements were set by the local traffic court for doing so. And again, after being stopped for a non-moving violation, I was charged with Driving While License Suspended (a crime). In all cases in Florida where I was charged with criminal Driving while license suspended, when I appeared in court on the matters, the charges were dismissed with prejudice, or nolle

28

1   prosequi, followed by expiration of the period for which the charges could be re-filed. (The particular details regarding these events, are described in my complaint filed as Bugoni v. Slosberg, U.S. District Court, Southern District of Florida, CV2011-11677).

107) Because in the case of DOJ "Project Omega" I was required as a condition of employment to answer the question of whether I have been arrested, charged or convicted of crimes, and because the records disseminated by defendant Bock appeared in the FBI report stated above I was denied employment.

108) Being denied employment repeatedly because of the records disseminated by defendants Bock and Jeanes is emotionally aggravating in the extreme, and is interfering with or causing me to be deprived of my Rights to Life, Liberty, Pursuit of Happiness, to Due Process, and Equal Protection of Law, to Employment and Contract, to Acquire and Possess Property, and to Serve My Country, and Better Myself, and Provide For My Family.

109) I have a Liberty Interest in pursuing my trade as and employee or contractor in any and all lawful business. Life itself, requires the acquisition and expenditure of capital to sustain it at all, and I choose the employment I seek, to maintain the standard of Life I choose and Provide For My Family, and Pursue my Own Happiness.

110) I have the Rights to acquire and Posses Property, and have Property Rights in the Employment and Contracts I seek, in addition to whatever Property I may purchase with the earnings therefrom. The Employment and Contracts themselves have value and I am being deprived of this property by the dissemination of records by defendant Jeanes and Bock.

28

111) I have the same Rights to Employment and Contract as all other persons in America, including those who have no criminal records, but am being denied Employment and Contracts as described above by the dissemination of records by defendants Jeanes and Bock. This is a violation of my Right to Equal Protection of law.

112) In all cases as described above, the acts of Jeanes, Bock, have caused me to be denied Employment and Contracts, and the concomitant deprivation of Life, Liberty, and Property, with neither Notice, nor Opportunity to Defend. This is a violation of my Right to Due Process.

113) I Provide For My Family by the Employment and Contracts I seek, and the earnings therefrom, and being denied that Employment and Contract as described above violates that Right. Neither the State of Florida, nor The State of Arizona, nor the United States of America have any Right to cause any harm whatsoever to any person who has not caused harm to others, nor committed crimes. I am the sole provider for my family. They have not committed any crimes. By disseminating records and causing me to lose employment thereby defendants Jeanes and Bock are causing harm upon others who are in no way the subject of those records nor who have committed any wrongdoing whatsoever. The denial of employment and loss of contracts due to the records disseminated by Jeanes and Bock, as described herein, are causing my family to suffer. This is sufficient to provoke any reasonable person to cause harm to these defendants.

114) Regarding the Conduct of defendants McGivney and Solferino:

115) On 15 September 2011 I began work with defendant Jefferies Corporation pusuant to a contract obtained through an intermediary as described herein.

28

1

116) Within about a week of starting work I received an e-mail from the "compliance department" of Jefferies Corporation notifying me that I must complete a questionnaire regarding my private affairs, as a condition of employment or continuing a contract.

117) About a day after answering the questionnaire, I received a telephone call from defendant McGivney requesting further explanation. Defendant Solferino was a party on that call.

118) During the call I asked defendant McGivney what regulation would prevent my continued employment and contracting with defendant Jefferies Corporation. He refused to answer and ultimately told me something to the effect that he would check in to the information I gave him and get back to me.

119) A short while later I received a telephone call from defendant Solferino indicating that I was being told to leave the property. Because I was told to leave the property, had I remained it would have been trespassing would have resulted in violence from police officers and criminal prosecution.

120) Defendant McGivney interfered with my contract and employment at defendant Jefferies Corporation by directing defendant Solferino threaten me with violence and prosecution for continuing to do so.

121) Defendant Solferino interfered with my contract and employment at defendant Jefferies Corporation by threatening me with violence and prosecution for continuing to do so.

122) Both defendants Solferino and McGivney acted or purported to be acting as employees, officers, and or shareholders in Jefferies Corporation in their conduct described herein.

28

1

123) Regarding the liability of defendant Jefferies Corporation:

124) Both defendants Solferino and McGivney claimed or purported to be acting as employees, officers, and or shareholders in Jefferies Corporation and acting pursuant to Jefferies' corporate policy by interfering in my contract and causing me to lose employment with defendant Jefferies corporation.

125) I am naming Jefferies Corporation as a defendant only because defendants Solferino and McGivney claimed to be acting as such.

126) I do not believe that Jefferies has a policy of causing harm to others as has happened in this case. I believe that defendants Solferino and McGivney were acting unilaterally or in conspiracy in a rogue or renegade fashion. Again, Jefferies Corporation is named as a defendant only because defendants Solferino and McGivney claimed Jefferies Corporation is the responsible party.

127) I do not believe this because Jefferies Corporation gave me employment, and paid. (Neither defendant Solferno nor McGivney did any such thing). Because of this, if Jefferies Corporation states in their Response to this Complaint that they did not authorize, order, nor in any way direct defendants Solferino and McGivney to commit the acts charged, and that further they renounce all conduct by defendants Solferino and McGivney in this matter as wrongful and solely Solferino and McGivney's own doing, and further that Jefferies Corporation agrees to dissociate themselves completely from these individuals, and not assist them in any way in their defense in this matter, I will agree to release Jefferies Corporation as a defendant in this matter, and further and permanently release Jefferies Corporation from all liability in this matter, and from the conduct of defendants Solferino and McGivney, and further agree to testify against those individuals in any wrongful

28   termination claim they may bring against Jefferies Corporation. This is a sworn statement.

1

128) If I do not get relief in this matter, particularly in the form of Preliminary Injunction upon defendants Jeanes and Bock, I will continue to suffer the extreme financial hardship that I have described herein. I will not be able to secure gainful employment, as would any other person, and when I do obtain it from parties like Jefferies Corporation, the likes of Solferino and McGivney will continue to interfere with it, and cause me to lose it. This is causing me, and will continue to cause me to be unable to service my debts, much less pay any of my recurring financial obligations, and ultimately fall further into debt due to the expenses I incur in obtaining employment, lose my home, and cause my family to become homeless.

I hereby swear and affirm that the foregoing statements contained in this affidavit are true and complete to the best of my knowledge and belief.

Sworn this ___ Day of _October_ , 2011.

Mr. Piero A Bugoni, Affiant.

Subscribed and Sworn to Before Me, A Notary of The State of New Jersey, This 10 - 08-11 Day of octobe 2011, ● MOULAY ALi OBAiDA ● Signer is identified by Florida State Driver's License, number: B250-661-67-083-0, and Library of Congress Reader ID number: R0996367.

Notary Public, State of New Jersey.
Seal:



28

Page

1

This Complaint, and the Affidavit Contained herein, Respectfully Submitted to This Court, This ___8ᵗʰ___ Day ___October___, 2011.

_____

Mr. Piero A. Bugoni, Plaintiff  Pro - Se

28